UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dale Owen Peterson, and<br>The Juice Bar, LLC, | Civil No. 11-2233 (DWF/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| The City of Florence, Minnesota, | |
| Defendant. | |

___

Bryan R. Battina, Esq., Battina Law, PLLC; and James F. Lester, Esq., James F. Lester, Attorney at Law, counsel for Plaintiffs.

James J. Thomson, Esq., and Mary D. Tietjen, Esq., Kennedy & Graven, Chartered, counsel for Defendant.

___

# INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 4). For the reasons set forth below, the Court denies Plaintiffs' motion.

# BACKGROUND

Plaintiff Dale Owen Peterson ("Peterson") is the president and manager of the Juice Bar, LLC (the "Juice Bar"). The Juice Bar is an adult entertainment establishment that features live, nude and semi-nude entertainment. The establishment does not hold a liquor license. Defendant City of Florence, Minnesota ("Florence" or the "City") is a

municipal corporation organized under the laws of the State of Minnesota. The entire area of Florence is approximately 0.2 square miles. (Doc. No. 15, Hachmann Aff. ¶ 2.) The town is comprised of 16 single-family residences, a small park, and a small parcel of land owned by the City. (*Id.* at ¶¶ 3–4.) There are thirty-six residents of Florence, five of whom are school-aged children. (*Id.* at ¶¶ 2, 6.)

On July 21, 2008, the Florence City Council adopted Ordinance No. 2008-03, entitled "An Ordinance of the City of Florence, Minnesota Adopting Anti-Blight Regulations." (Compl., Ex. A.) The ordinance governed the operation of adult-oriented businesses and defined, among other things, "sexually oriented business" and "adult cabaret." (*Id.* at 3–4.) The ordinance required that sexually-oriented businesses be operated only in a location zoned "C-2" and further banned the operation of a sexually-oriented business within 250 feet of another sexually-oriented business, or a residence, liquor-licensed establishment, "day care facility, school, library, park, playground, state or federal wildlife area or preserve, religious institution or other public recreational facility." (*Id.* at 7.)

On August 11, 2008, the City enacted Ordinance No. 2008-02, entitled "An Ordinance of the City of Florence, Minnesota Adopting a Zoning Ordinance to be Incorporated as Chapter 10 of the Florence City Code." (Compl., Ex. B.) The ordinance defined the following district classifications: (1) "R-1" or "Single Family Residential District"; (2) "B-1" or "Business District"; and (3) "C-2" or "Commercial District." (*Id.* at 6.) Ordinance No. 2008-02 further zoned "all areas within City limits" as "R-1 Single-Family Residential." (*Id.* at 21.)

2

The Juice Bar opened for business in Florence on December 17, 2010. At approximately 10:30 p.m. on that date, law enforcement officers issued Peterson a citation for violating Ordinance No. 2008-03 by operating a sexually-oriented business within 250 feet of a residence and city park and by operating outside a C-2 zone. (*See* Compl., Ex. C.) Under the threat of arrest, Peterson closed the Juice Bar for business the same night. The Juice Bar has remained closed since December 17, 2010.

Plaintiffs filed this action on August 5, 2011, challenging the constitutionality of Ordinance Nos. 2008-02 and 2008-03. (Doc. No. 1, Compl.) Plaintiffs claim that the ordinances are facially unconstitutional and unconstitutional as applied to Plaintiffs under the First and Fourteenth Amendments to the U.S. Constitution.[1] (Compl. ¶ 67.) On August 19, 2011, Plaintiffs filed the instant motion for injunctive relief. (Doc. No. 4.)

On September 12, 2011, the City adopted Ordinance No. 2011-09, which repealed Ordinance No. 2008-03.[2] (Doc. No. 16, Ex. 3.) Ordinance No. 2011-09 expresses that "the City desires to maintain Florence solely as a residential community" and notes that "the City has limited infrastructure, staff, and resources to accommodate commercial or business establishments" and "does not wish to allow such uses within the City." (*Id.*)

The Court now considers Plaintiffs' motion for injunctive relief.

---

[1]   Among other things, Plaintiffs claim that "the act of zoning the entire city 'R-1 Single-Family Residential District'" constitutes "an invalid total ban on 'adult entertainment businesses' that does not survive strict scrutiny." (Compl. ¶ 62.)

[2]   According to the City, the City is in the process of repealing the commercial and business zoning regulations contained within Ordinance No. 2008-02. A public hearing on the repealing of those provisions is scheduled for October 10, 2011.

3

## DISCUSSION

### I. Legal Standard

Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). In each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *See West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the injunctive relief bears the "complete burden" of proving all of the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

### II. Anti-Blight Regulations

In light of the City's repeal of its Anti-Blight regulations (Ordinance No. 2008-03), the Court need not reach Plaintiffs' motion to the extent it seeks to prevent the City from enforcing Ordinance No. 2008-03. Plaintiffs' motion is moot in this respect. The Court considers Plaintiffs' motion to the limited extent it seeks injunctive relief with respect to the zoning ordinance (Ordinance No. 2008-02) as discussed below.

### III. Zoning Ordinance

#### A. Likelihood of Success on the Merits

The first *Dataphase* factor requires that the movant establish a substantial probability of success on the merits of its claim. *See Dataphase*, 640 F.2d at 114.

4

"Because of the inherent public interest in free speech and the threat of irreparable injury if speech is suppressed, courts rarely focus on the three latter *Dataphase* factors; instead they look primarily to whether the party seeking the preliminary injunction is likely to succeed on the merits." *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1031 (D. Minn. 2010) (quoting *Wickersham v. City of Columbia, Missouri*, 371 F. Supp. 2d 1061, 1075 (W.D. Mo. 2005)). In a First Amendment case, "the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). The Court finds that Plaintiffs have not met their burden of demonstrating that they are likely to succeed on the merits of their claim.

Plaintiffs contend that there are no circumstances under which a city, regardless of its size, may be constitutionally permitted to adopt an ordinance that zones the city as entirely residential so as to provide no venue for adult entertainment within the municipality. In effect, Plaintiffs appear to argue that every municipality, no matter how small, is required to permit sexually-oriented businesses to open within city limits, even if the city has expressed a lack of need for, and a lack of resources to accommodate, commercial enterprise of any kind and has pointed to potential alternative locations for such businesses in the surrounding county.

Sexually-oriented businesses may be subject to content-neutral time, place and manner restrictions that are designed to advance a substantial government interest and that leave open alternative channels of communication. *Bukaka, Inc. v. County of Benton*, 852 F. Supp. 807, 812 (D. Minn. 1993) (citing *City of Renton v. Playtime Theatres,* 475 U.S. 41, 47 (1986)). "Laws of general application that impact protected

expression in some contexts, but not others, are subject to the same scrutiny." *Bukaka*, 852 F. Supp. at 812 (citing *Barnes v. Glen Theatres, Inc.,* 501 U.S. 560 (1991) and *United States v. O'Brien,* 391 U.S. 367 (1968)).  "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989); *see, e.g.*, *Barnes*, 501 U.S. at 572 (quoting *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968)) ("[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is not greater than is essential to the furtherance of that interest.").

A municipality's assertion of a content-neutral justification is sufficient to render a challenged ordinance subject to time, place, and manner analysis. *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 468 (8th Cir. 1991).  "A valid time, place, and manner restriction must (1) be narrowly tailored to serve a significant governmental interest, and (2) leave open ample alternative channels for communication of the information." *Id.* (citing *Ward*, 491 U.S. at 791).  In general, zoning is a legitimate municipal tool employed to achieve permissible municipal objectives. *See Cornerstone*, 948 F.2d at 468; *Renton*, 475 U.S. at 50.  Still, "when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." *Schad v. Borough of Mouth Ephraim*, 452 U.S. 61, 68 (1981).  Although a municipality is not required to show that its ordinance is the least-restrictive

means of accomplishing its objective, a city "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Cornerstone*, 948 F.2d at 468 (quoting *Ward*, 491 U.S at 799).

On the record before it, the Court finds it difficult to envision circumstances under which Plaintiffs are likely to prevail given the unique facts of this case. The Court seriously questions whether Plaintiffs will succeed on the merits of their claim that the zoning ordinance is unconstitutional in light of the small size of the municipality, the ordinance's content-neutral and complete ban on commercial enterprise of every kind (and its incidental effect of prohibiting sexually-oriented businesses), the City's interest in remaining entirely residential, and the availability of alternative locations for sexually-oriented businesses in surrounding areas of Lyon County pursuant to county-wide zoning. *See, e.g., Barnes*, 501 U.S. at 571–72; *O'Brien*, 391 U.S. at 376–77; *Renton*, 475 U.S. at 49–50. *Contra Phillips v. Borough of Keyport*, 107 F.3d 164, 176 n.4 (3d Cir. 1997) (citing *Schad*, 452 U.S. at 76–77) ("Here, the Borough does not rely on the availability of 'adult entertainment' sites in neighboring areas outside its limits; nor has it offered any evidence of such sites."); *Centerfold Club, Inc. v. City of St. Petersburg*, 969 F. Supp. 1288, 1306 (M.D. Fla. 1997) ("Absent a county-wide zoning scheme, the City cannot avail itself of the sites in the unincorporated area of Pinellas County.").

Contrary to Plaintiffs' assertions, the Court concludes that the United States Supreme Court has contemplated the possibility that adult entertainment businesses may be excluded from primarily residential communities where said businesses may locate in

7

selected areas of the county as permitted by county-wide zoning. *Schad*, 452 U.S. at 76. In *Schad*, the Supreme Court expressly left open the question, stating that it "may very well be true" that allowing "live entertainment" in reasonably nearby areas outside the limits of a primarily residential community, while prohibiting the same activity in the municipality itself, would be "quite legal" where county-wide zoning exists. *Id.* ("[The Borough's] position suggests the argument that if there were countywide zoning, it would be quite legal to allow live entertainment in only selected areas of the county and to exclude it from primarily residential communities, such as the Borough of Mount Ephraim. This may very well be true, but the Borough cannot avail itself of that argument in this case."). Here, Defendant has submitted evidence of available alternative locations for sexually-oriented businesses in surrounding areas of Lyon County pursuant to county zoning. (*See* Doc. No. 16, Ex. 2 (identifying "464 acres of land in the County's Highway Commercial zoning district in which adult uses may locate"); Exs. 4 & 5.) The facts of this case, taken together, cast significant doubt on Plaintiffs' ability to succeed on the merits.

After reviewing the record and the relevant authority, the Court concludes that Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their claim. Accordingly, this factor strongly supports denying Plaintiffs' request for injunctive relief.

    **B.**    **Irreparable Harm, Balance of Harms and Public Interest**

Plaintiffs must also establish that irreparable harm will result if injunctive relief is not granted. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). "The

loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). For this reason, the irreparable harm factor generally weighs in the movant's favor in First Amendment cases, although it is often intertwined with a court's evaluation of the likelihood of success on the merits. *See Phelps-Roper*, 545 F.3d at 690 (concluding that if the movant "can establish a sufficient likelihood of success on the merits of her First Amendment claim, she will also have established irreparable harm as the result of the deprivation").

Likewise, the determination of where the public interest lies is also dependent on the likelihood of success on the merits of the First Amendment challenge "because it is always in the public interest to protect constitutional rights." *Id.* In addition, the balance of equities typically favors the constitutionally-protected freedom of expression. *Id.*

Even assuming, without deciding, that the irreparable harm, balance of harms, and public interest *Dataphase* factors each independently weigh in Plaintiffs' favor, the Court finds Plaintiffs' inability to demonstrate a substantial likelihood of success on the merits to be determinative in this case. Plaintiffs' failure to show that they are likely to prevail on their constitutional claim justifies denying the motion for injunctive relief.

## CONCLUSION

Because Plaintiffs have failed to meet their burden to show that injunctive relief is warranted, the Court denies Plaintiffs' motion with respect to Ordinance No. 2008-02. Plaintiffs' motion is moot with respect to Ordinance No. 2008-03. Consequently, the

Court denies Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order in its entirety.

## ORDER

Based upon the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. [4]) is **DENIED** as follows:

    a. To the extent Plaintiffs seek an order restraining and enjoining Defendant City of Florence from enforcing the provisions of Ordinance No. 2008-03, the motion is **DENIED AS MOOT**.

    b. To the extent Plaintiffs seek an order restraining and enjoining Defendant City of Florence from enforcing the provisions of Ordinance No. 2008-02, the motion is **DENIED**.

Dated: October 4, 2011                s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge