UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dale Owen Peterson, and
The Juice Bar, LLC, a Minnesota
limited liability company,

        Plaintiffs,

v.

The City of Florence, Minnesota,
a Municipal corporation,

        Defendant.

Civil No. 11-2233 (DWF/JJK)

**MEMORANDUM
OPINION AND ORDER**

_____

Bryan R. Battina, Esq., Battina Law, PLLC; and James F. Lester, Esq., James F. Lester, Attorney at Law, counsel for Plaintiffs.

James J. Thomson, Esq., and Mary D. Tietjen, Esq., Kennedy & Graven, Chartered, counsel for Defendant.

_____

# INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 38). For the reasons set forth below, the Court grants Defendant's motion.

# BACKGROUND

Plaintiff Dale Owen Peterson ("Peterson") was the president and manager of the Juice Bar, LLC (the "Juice Bar") in Florence, Minnesota. (*See* Doc. No. 41, Ex. 12 ("Peterson Dep.") at 12-13.) The Juice Bar was an adult entertainment establishment that featured live, nude entertainment. (*See id.* at 16.) The establishment did not hold a liquor

license because the City does not allow for the issuance of intoxicating liquor licenses. (Doc. No. 44, Pagel Aff. ¶ 6.)

Defendant City of Florence, Minnesota ("Florence" or the "City") is a small (0.2 square miles), entirely residential community located in southwestern Minnesota. (Doc. No. 45, Hachmann Aff. ¶ 2.) The town is comprised of sixteen single-family residences, a small park, and a small parcel of land owned by the City. (*Id.* ¶¶ 3-4.) There are thirty-six residents of Florence, five of whom are school-aged children. (*Id.* ¶¶ 2, 6.)

## I.  City Ordinances

On July 21, 2008, the Florence City Council adopted Ordinance No. 2008-03, entitled "An Ordinance of the City of Florence, Minnesota Adopting Anti-Blight Regulations." (Doc. No. 50, Ex. 13.) The ordinance governed the operation of adult-oriented businesses and defined, among other things, "sexually-oriented business" and "adult cabaret." (*Id.* at 3-5.) The ordinance required that sexually-oriented businesses be operated only in a location zoned "C-2" and further banned the operation of a sexually-oriented business within 250 feet of another sexually-oriented business, or a residence, liquor-licensed establishment, "day care facility, school, library, park, playground, state or federal wildlife area or preserve, religious institution or other public recreational facility." (*Id.* at 8.)

On August 11, 2008, the City enacted Ordinance No. 2008-02, entitled "An Ordinance of the City of Florence, Minnesota Adopting a Zoning Ordinance to be Incorporated as Chapter 10 of the Florence City Code." (Doc. No. 50, Ex. 14.) The ordinance defined the following district classifications: (1) "R-1" or "Single-Family

Residential District"; (2) "B-1" or "Business District"; and (3) "C-2" or "Commercial District." (*Id.* at 16.) Ordinance No. 2008-02 further zoned "all areas within City limits" as "R-1 Single-Family Residential." (*Id.* at 21.)

The Juice Bar opened for business in Florence on December 16, 2010. (Peterson Dep. at 34.) At approximately 10:30 p.m. on December 17, 2010, law enforcement officers issued Peterson a citation for violating Ordinance No. 2008-03 by operating a sexually-oriented business within 250 feet of a residence and city park and by operating outside a C-2 zone. (*Id.* at 35; *see also* Doc. No. 1, Compl., Ex. C.) Under the threat of arrest, Peterson closed the Juice Bar for business the same night. (*See* Peterson Dep. at 36.)

Plaintiffs filed this action on August 5, 2011, challenging the constitutionality of Ordinance Nos. 2008-02 and 2008-03. (Compl.) Plaintiffs claim that the ordinances are facially unconstitutional and unconstitutional as applied to Plaintiffs under the First and Fourteenth Amendments to the U.S. Constitution. (*Id.* ¶ 67.) In particular, Plaintiffs contend that "the act of zoning the entire city 'R-1 Single-Family Residential District'" constitutes "an invalid total ban on 'adult entertainment businesses' that does not survive strict scrutiny." (*Id.* ¶ 62.) Plaintiffs have asserted the following four counts against the City: (1) Declaratory Relief; (2) Injunctive Relief; (3) Damages Against Florence; and (4) Attorney's Fees and Costs. (*Id.* ¶¶ 67-83.) On August 19, 2011, Plaintiffs filed a

motion for injunctive relief (Doc. No. 4), which the Court denied by order dated October 4, 2011 (Doc. No. 28).[1]

On September 12, 2011, the City adopted Ordinance No. 2011-09, which repealed Ordinance No. 2008-03. (Doc. No. 41, Ex. 3.) Ordinance No. 2011-09 expresses, in part, that "the City desires to maintain Florence solely as a residential community" and notes that "the City has limited infrastructure, staff, and resources to accommodate commercial or business establishments" and "does not wish to allow such uses within the City." (*Id.* at 1.) The ordinance further notes that "all of the property in the City is currently zoned R-1." (*Id.*) Citing the same considerations, the City adopted Ordinance No. 2011-02 in October 2011, which repealed the sections of Ordinance No. 2008-02 entitled "B-1 Business District" and "C-2 Commercial District." (Doc. No. 41, Ex. 6.) The effect of the amendments was to prohibit any and all business and commercial uses (including adult uses) within the City. (*See id.*)

## II.   Lyon County Zoning

According to the planning and zoning administrator for Lyon County (John Biren), Lyon County contains approximately 634 acres of land zoned as C-I Highway Commercial. (Doc. No. 46, Biren Aff. ¶ 4.) Of that amount, approximately 464 acres are available for adult uses, not including potential areas (if any) located within the city limits of Marshall and Tracy. (*Id.* ¶¶ 4, 6.) That acreage amount equates to

---

[1]   The Court concluded that Plaintiffs failed to meet their burden to show that injunctive relief was warranted with respect to Ordinance No. 2008-02 and denied the motion as moot with respect to Ordinance No. 2008-03. (Doc. No. 28.)

approximately seventy-three percent of the C-I District in Lyon County. (*Id.* ¶ 4.) GIS Analyst/Cartographer Bruce McLaughlin, however, asserts that there are only 204.26 acres of land available in Lyon County for adult uses, which equates to 32.22 percent of the County's Highway Commercial Zoning. (Doc. No. 24, Second McLaughlin Aff. ¶ 54.)

**III.     Recent Activity at the Juice Bar Address**

Between September 2011 and January 2012, the Lyon County Sheriff's Office received numerous complaints regarding the possible operation of a nude dance club and possible prostitution at the premises formerly known as the Juice Bar. (Doc. No. 43, Wallen Aff. ¶ 1.) During September and October 2011, Sergeant Eric Wallen collected several advertisements related to a "new club" that was opening in Florence, Minnesota. (*Id.* ¶ 2.) One such classified ad stated "Dancers Wanted," while other fliers advertised "adult parties" and "dancers" at the address of the former Juice Bar in Florence. (*Id.*)

On October 6, 2011, Peterson's lawyer sent a letter to the Lyon County Sheriff and the Florence City Attorney explaining that Peterson now resides at the address of the former Juice Bar and that "all activities at Mr. Peterson's residence [would] be of a private social nature," in accordance with the City's zoning ordinance (Ordinance No. 2008-02). (Doc. No. 41, Ex. 7.) On multiple occasions thereafter, Sergeant Wallen drove through Florence and observed vehicles parked outside the address on Friday and Saturday nights. (Wallen Aff. ¶ 3.) On January 4, 2012, Sergeant Wallen interviewed a woman regarding the activities occurring at the former Juice Bar. (*Id.* ¶ 5.) She informed him that nude dancing occurred at the premises and patrons paid a $10 "lodging fee" to

enter. (*Id.*) On January 7, 2012, Sergeant Wallen and a Deputy conducted exterior surveillance of the premises and witnessed several people enter and exit the premises, some carrying alcohol with them. (*Id.* ¶ 6.) At one point, a woman wearing lingerie exited the building accompanied by a man. (*Id.*)

On January 13, 2012, Deputy Joel Bill of the Redwood County Sheriff's Office and Officer Jeff Morris of the Lyon County Sheriff's Department conducted undercover surveillance inside the former Juice Bar. (Doc. No. 41, Ex. 10.) Each reported viewing a sign stating "Dale's Party House" upon entering. (*Id.*) After stepping into the location they approached a bar, behind which stood an unidentified white male standing behind it. (*Id.*) The unidentified male informed them that there was a ten dollar cover charge to get in, which they paid. (*Id.*) After asking the unidentified male if they sold drinks, he responded by telling them "there was a fridge at the end of the bar with a donation jar." (*Id.*) Both took a beer and Deputy Bill placed five dollars into the donation jar. (*Id.*) The officers then observed several female, nude dancers on stage, who collected money from patrons. (*Id.*)

Private Investigator Tim Mulloy also visited the former Juice Bar location on January 20 and 21, 2012. (Doc. No. 42, Mulloy Aff. ¶ 2.) His account is consistent with that of the two officers. (*See id.* ¶¶ 3-6.) Additionally, Mulloy spoke to Peterson, who informed Mulloy that "the establishment was open from 7:30 p.m. until 3:00 a.m. unless they're having a good business night." (*Id.* ¶ 7.) Mulloy also inquired about the "VIP" room, which a patron informed him cost $100 plus tips because "it has a bed in there," and learned that lap dances in the couch area cost $20 per dance. (*Id.* ¶ 8.)

Peterson admits that the activities witnessed by the officers and investigator have been ongoing since October 2011, after the Juice Bar was shut down. (*See* Peterson Dep. at 37-49.) Peterson contends, however, that he is not in violation of the zoning ordinance because he is using the property as his private residence. (*See* Doc. No. 41, Ex. 7.)

The City filed the instant motion for summary judgment on May 4, 2012. (Doc. No. 38.) The City maintains that its zoning ordinance is valid and constitutional in all respects. (Doc. No. 40 at 18.) The Court now considers the City's motion for summary judgment.

## DISCUSSION

### I.     Summary Judgment Standard

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record

that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     The City's Motion

At the heart of Plaintiffs' claims is a challenge to the constitutionality of the City's zoning ordinances with respect to sexually-oriented businesses. The City maintains, however, that its act of zoning the community as entirely residential, and thus prohibiting any and all business or commercial uses within the City, passes constitutional muster. Specifically, the City contends that its zoning ordinances are content-neutral, serve a substantial government interest, and allow for adequate alternative channels of communication for sexually-oriented businesses in surrounding areas of Lyon County.[2]

## III.     Ordinance Nos. 2011-09, 2011-02, and 2008-02

Sexually-oriented businesses may be subject to content-neutral time, place, and manner restrictions that are designed to advance a substantial government interest and that leave open alternative channels of communication. *Bukaka, Inc. v. County of*

---

[2]     Additionally, while Plaintiffs claim that they no longer operate a sexually-oriented business in the City and that the address of the former Juice Bar is now Peterson's personal residence, the City maintains that the observed activities constitute continued violations of its zoning ordinances. The Court notes that a determination as to whether or not the activities in question constitute a violation of the City's zoning ordinances is not within its purview for purposes of the motion now before it. The Court limits its analysis to the claims articulated in the Complaint: specifically the constitutionality of the ordinances at issue.

*Benton*, 852 F. Supp. 807, 812 (D. Minn. 1993) (citing *City of Renton v. Playtime Theatres,* 475 U.S. 41, 47 (1986)).  "Laws of general application that impact protected expression in some contexts, but not others, are subject to the same scrutiny." *Bukaka*, 852 F. Supp. at 812 (citing *Barnes v. Glen Theatres, Inc.,* 501 U.S. 560 (1991) and *United States v. O'Brien,* 391 U.S. 367 (1968)).  "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989); *see, e.g.*, *Barnes*, 501 U.S. at 572 (quoting *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968)) ("[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is not greater than is essential to the furtherance of that interest.").

      A municipality's assertion of a content-neutral justification is sufficient to render a challenged ordinance subject to time, place, and manner analysis. *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 468 (8th Cir. 1991).  "A valid time, place, and manner restriction must (1) be narrowly tailored to serve a significant governmental interest, and (2) leave open ample alternative channels for communication of the information." *Id.* (citing *Ward*, 491 U.S. at 791).  In general, zoning is a legitimate municipal tool employed to achieve permissible municipal objectives. *See Cornerstone*, 948 F.2d at 468; *Renton*, 475 U.S. at 50.  Still, "when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial

government interest." *Schad v. Borough of Mouth Ephraim*, 452 U.S. 61, 68 (1981). Although a municipality is not required to show that its ordinance is the least-restrictive means of accomplishing its objective, a city "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Cornerstone*, 948 F.2d at 468 (quoting *Ward*, 491 U.S at 799).

Here, given the unique facts of this case, the City has sufficiently demonstrated that Ordinance Nos. 2011-09, 2011-02, and 2008-02 (as amended) are content-neutral, advance a substantial government interest, and leave open alternative channels of communication for sexually-oriented businesses as discussed below.

### A. Content-Neutral Justification

Plaintiffs contend that the City's desire to be exclusively residential is aimed directly at "sexually-oriented businesses." (Doc. No. 47 at 2.) The ordinances at issue, however, are not tailored directly toward sexually-oriented businesses. In fact, Ordinance Nos. 2011-09 and 2011-02 expressly note that "the City has limited infrastructure, staff, and resources to accommodate commercial or business establishments" and "does not wish to allow such uses within the City." (Doc. No. 41, Exs. 3 & 6.) In this manner, the zoning ordinances prohibit commercial enterprise of every kind and have only the incidental effect of prohibiting sexually-oriented businesses within city limits. (*See id.*) In light of the exceptionally small size of the municipality (0.2 square miles), the City's limited infrastructure and resources, and its interest in remaining entirely residential, the Court finds that the ordinances' complete ban on business and commercial uses (including adult uses) to be content-neutral. *See Ward*, 491 U.S. at 791 ("A regulation

that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."). The Court therefore considers whether the zoning ordinances are (1) "narrowly tailored to serve a significant governmental interest" and (2) whether they "leave open ample alternative channels for communication." *See Cornerstone*, 948 F.2d at 468.

### B.   Significant Governmental Interest

The Court further concludes that zoning the City as entirely residential advances significant governmental interests, which the zoning ordinances are narrowly tailored to serve.[3] *See id*. The City's small size, lack of resources, limited infrastructure and its "interest in attempting to preserve the quality of urban life . . . must be accorded high respect." *See Renton*, 475 U.S. at 49. Notably, the stated purpose of Ordinance No. 2008-02 is to protect "the planning process and the health, safety and welfare of [the City's] citizens." (Doc. No. 50, Ex. 14.) It appears to the Court that the ordinances at issue are aimed at preserving the residential nature and quality of life of Florence's citizens. The City has the power to enact its own ordinances and its decision to be zoned entirely residential is unrelated to the suppression of free expression; the incidental restriction on any First Amendment freedoms resulting from the zoning ordinances is no greater than necessary to the furtherance of those interests. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 79-80 (1976). Thus, the zoning ordinances are narrowly tailored to further significant governmental interests.

---

[3]   Plaintiffs do not appear to dispute that the City's ordinances satisfy this prong.

### C. Alternative Channels of Communication

Plaintiffs also contend that the City has failed to demonstrate that adequate alternative channels for adult entertainment expression exist in greater Lyon County. The test for assessing the availability of alternative avenues of communication is one of reasonableness. *See Renton*, 475 U.S. at 53-54; *Alexander v. Minneapolis*, 928 F.2d 278, 284 (8th Cir. 1991) ("The City is not required by the First Amendment to provide Alexander with an actual site available to relocate his theatres. Rather, Minneapolis is only prohibited from denying plaintiff 'a reasonable opportunity to open and operate an adult theater within the city.'").

The United States Supreme Court has contemplated the possibility that adult entertainment businesses may be excluded from primarily residential communities where said businesses may locate in selected areas of the county as permitted by county-wide zoning. *Schad*, 452 U.S. at 76. In *Schad*, the Supreme Court expressly left open the question, stating that it "may very well be true" that allowing "live entertainment" in reasonably nearby areas outside the limits of a primarily residential community, while prohibiting the same activity in the municipality itself, would be "quite legal" where county-wide zoning exists. *Id.* ("[The Borough's] position suggests the argument that if there were countywide zoning, it would be quite legal to allow live entertainment in only selected areas of the county and to exclude it from primarily residential communities, such as the Borough of Mount Ephraim. This may very well be true, but the Borough cannot avail itself of that argument in this case.").

Here, the City has in no way denied Plaintiffs a reasonable opportunity to open and operate an adult use business elsewhere in Lyon County. The City has submitted evidence of available alternative locations for sexually-oriented businesses in surrounding areas of Lyon County (in its C-I Highway Commercial District) pursuant to county-wide zoning.[4] (Biren Aff. ¶ 4 (identifying 464 acres of land in the County's C-I District in which adult uses may locate); *see also* Doc. No. 41, Exs. 2, 4, 5.) The available acreage equates to approximately seventy-three percent of the County's C-I District, without taking into consideration potential area (if any) within the city limits of Tracy and Marshall.[5] (Biren Aff. ¶¶ 4, 6.) All such areas are located "within 7 to 25 miles of the City of Florence." (*Id.* ¶ 5.)

In light of the fact that approximately seventy-three percent of commercial land in Lyon County is available for adult use, the Court concludes that the City's zoning ordinances "leave open ample alternative channels for communication." *See Cornerstone*, 948 F.2d at 468. Given the availability of alternative locations for the

---

[4] Plaintiffs' expert, Bruce McLaughlin, contends that the Lyon County zoning ordinance does not represent "county-wide zoning," but rather regulates only "the unincorporated area of the County." (Second McLaughlin Aff. ¶¶ 8-9.) Such a distinction, however, is irrelevant for purposes of determining whether reasonable alternative channels for adult uses exist.

[5] McLaughlin suggests that there are only 204.26 acres of commercial land available in Lyon County for adult use, an amount equal to 32.22 percent of the C-I District. (Second McLaughlin Aff. ¶ 54.) McLaughlin's calculations, however, exclude parcels of land that could be subdivided. *See Schneider v. City of Ramsey*, 800 F. Supp. 815, 821 (D. Minn. 1992) ("The process of subdividing, as such, does not make the available land legally unsuitable for adult businesses."). Even assuming, without deciding, that only 204.26 acres of land were available for adult use within Lyon County, the Court's conclusion would remain unchanged.

operation of sexually-oriented businesses in surrounding areas of Lyon County, Plaintiffs have a reasonable opportunity to open and operate an adult entertainment establishment within close proximity to the City. *See, e.g., Barnes*, 501 U.S. at 571–72; *O'Brien*, 391 U.S. at 376–77; *Renton*, 475 U.S. at 49–50. *Contra Phillips v. Borough of Keyport*, 107 F.3d 164, 176 n.4 (3d Cir. 1997) (citing *Schad*, 452 U.S. at 76–77) ("Here, the Borough does not rely on the availability of 'adult entertainment' sites in neighboring areas outside its limits; nor has it offered any evidence of such sites."); *Centerfold Club, Inc. v. City of St. Petersburg*, 969 F. Supp. 1288, 1306 (M.D. Fla. 1997) ("Absent a county-wide zoning scheme, the City cannot avail itself of the sites in the unincorporated area of Pinellas County.").

## CONCLUSION

Because the City has demonstrated that its zoning ordinances are content-neutral, further a substantial government interest, and do not deny Plaintiffs reasonable alternative channels through which to operate an adult use business within Lyon County, the Court grants the City's motion for summary judgment.

## ORDER

Based upon the foregoing, and all records, files and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Defendant's Motion for Summary Judgment (Doc. No. [38]) is **GRANTED**.

2.   Defendant is entitled to judgment with respect to all four counts of Plaintiffs' Complaint (Doc. No. [1]).

3.      Plaintiffs are enjoined from operating any business or commercial use within the City of Florence.

4.      Plaintiffs' Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 1, 2012                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge